IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TOMMY ROBINSON,

   Plaintiff,

v.

NURSE BURNICE MACE,

   Defendant.

Civil Action No.: DKC-20-1143

# MEMORANDUM OPINION

Pending in this civil rights case is the motion of Defendant Burnice Mace, (f/k/a Burnice Swan)[1] to dismiss or in the alternative for summary judgment. ECF No. 26. Self-represented Plaintiff Tommy Robinson opposes the motion. ECF Nos. 32 & 33. No hearing is necessary. *See* Local Rule 105.6 (D. Md. 2018). For the reasons that follow, Defendant's motion, construed as a motion for summary judgment, shall be granted.

## BACKGROUND

   A.   Complaint Allegations

Plaintiff is a prisoner committed to the custody of the Maryland Division of Correction and confined to Western Correctional Institution in Cumberland, Maryland. Plaintiff describes himself as a "weak 70 year old, blind wheelchair bound man with serious medical problems." He asserts that he has been "requesting medical treatment & operations that [are] necessary to <u>relieve his serious pain</u>, in his neck, middle back, lower back and right hip" for "many years." ECF No. 1-2 at 1 (emphasis in original). According to Plaintiff, medical staff conspired with prison

---

[1] The Clerk is directed to correct the docket to reflect that the defendant's name is Burnice Mace.

administrators to prevent him from receiving an MRI or any outside medical treatment. *Id*. He states, however, that "over a year ago" he began receiving treatment from Dr. Getachew who ordered an MRI and prescribed Ultram (also known as Tramadol) to treat Plaintiff's chronic pain. *Id*. at 2.

Plaintiff claims that despite the fact that his MRI revealed that he has "severe injuries . . . Brenda Reese & others got plaintiff (sic) pain medication stopped for the past nine months & stop[ped him from] being seen by Dr. Getachew. ECF No. 1-2 at 2. Plaintiff states that after "being denied appointments several times" Dr. Getachew examined him on January 13, 2020, and discussed a referral to the University of Maryland for a neurology consult to consider surgery to relieve Plaintiff's back and right hip pain. *Id*. Plaintiff states that Dr. Getachew also discussed providing him with a TENS unit as well as an MRI for his right hip and also ordered 50mg Ultram for 90 days. *Id*.

Plaintiff began receiving the prescribed Ultram on January 15, 2020, and states that it began to relieve his pain slowly; however, on January 28, 2020, defendant Burnice Mace did not give Plaintiff his Ultram. ECF No. 1-2 at 2. The following morning Plaintiff found out from the "med tech" that Dr. Getachew had terminated his prescription the night before when Defendant was working. *Id*. Plaintiff turned in a sick call slip requesting to see Dr. Getachew to discuss why his prescription had been stopped, but that he was never called to medical. *Id*. Plaintiff denies any wrongdoing. *Id*. at 3.

Although Plaintiff claims that he received assurances from Dr. Poku that his Ultram medication would be renewed when he spoke with him on December 31, 2019, he never received the medication. ECF No. 1-2 at 3. Plaintiff filed an administrative remedy procedure complaint ("ARP") because he had not received the medication. *Id*.

On February 15, 2020, Plaintiff was seen by Janette Clark who informed him that his prescription for Ultram was terminated because he was "observed twice leaving the medication line without taking [his] Ultram." ECF No. 1-2 at 3. Dr. Getachew was notified and, on January 28, 2020, he discontinued the medication due to Plaintiff's non-compliance. *Id*. Plaintiff submitted a sick call slip to see Dr. Getachew because "this was a LIE and [he] had done nothing wrong." *Id*.

Plaintiff filed another ARP on February 27, 2020 (case no. WCI-0461-20), but all of his requests were denied. ECF No. 1-2 at 3. He claims that he was also denied all alternatives for Ultram "such as creams, patches, pain shots & medical ice" to treat his pain despite having received such alternatives for years. *Id*. Plaintiff claims that the false allegations against him amounted to a set-up because he had sued Nurse Mace and Brenda Reese for refusing to give him a humidifier for his c-pap machine and for discriminating against him. *Id*. at 4.

Plaintiff requests that this court obtain a copy of all the video surveillance footage covering times during which medications are dispensed. ECF No. 1-2 at 4. He maintains that pills are passed out in a cup and the cart is then rolled to the next cell. *Id*. In his view, the video surveillance will establish that he did not pocket his medication and leave as alleged by Nurse Mace. *Id*. As relief, Plaintiff seeks $500,000 in damages and an order requiring reinstatement of his pain medication. *Id*. at 5-6.

B.    Defendant's Response

In her declaration, Nurse Mace states that she is a Registered Nurse and has worked in that capacity at Western Correctional Institution since 2015. ECF No. 26-4 at 1, ¶ 2. She states that she is unaware of any prior lawsuit filed against her by Plaintiff and that her actions regarding his

3

medical treatment "were based solely on [her] observations and medical training and education." *Id*. at 2, ¶ 5.

Nurse Mace describes Plaintiff as a "70-year-old man with a history of obesity, sleep apnea, hearing loss, hypertension, diabetes mellitus, hyperlipidemia, benign prostatic hyperplasia, chronic obstructive pulmonary disease (COPD), and chronic neck, back, and hip pain." ECF No. 26-4 at 2, ¶ 6; *see also* ECF No. 26-5 at 73. Nurse Mace also notes that Plaintiff has a history of "noncompliance and diversion of prescribed pain medications. *Id*., *see also* ECF No. 26-5 at 203-4 (test result: 12/19/19, no Gabapentin detected); 206 (12/29/19 notification of lab work result and discontinuation of Gabapentin).

Nurse Mace states that Dr. Getachew prescribed Tramadol (Ultram) to Plaintiff on January 13, 2020. ECF No. 26-4 at 3, ¶ 7. Nurse Mace explains that Tramadol is "an opioid-like pain medication that is highly regulated in correctional settings because of its potential serious and common side effects, such as psychological and physical addiction, and potential misuse as contraband." *Id*. at ¶ 8. Misuse of pain medications in a correctional setting include not only the illicit use of the drug to "get high," but also to trade for contraband and for use in suicide attempts. *Id*. Additionally, inmates who received such medications may become targets for "violence or other manipulation to obtain access to the patient's drugs." *Id*. For these reasons, "Tramadol is administered as a 'watch take' medication," meaning "patients are administered medication at the medication administration window and are required to take the medication while at the window in the presence of the administering nurse." *Id*.

On January 21, 2020, Nurse Mace was the charge nurse observing newer nurses who were administering medication to patients. ECF No. 26-4 at 3, ¶ 9, *see also* ECF No. 26-5 at 11. After Plaintiff was identified and given his Tramadol as ordered, he wheeled away from the medication

4

administration line without taking his medication; instead, Plaintiff put the pill in his front pocket. *Id*. Nurse Mace notified the provider of Plaintiff's actions and explains that "[w]hen a nurse observes a patient potentially diverting medication, the protocol is to notify a provider, who may order laboratory testing to assess a patient's compliance with his prescribed medication." *Id*. Nurse Mace states that she is not involved in any decisions regarding whether a particular medication should be discontinued or prescribed. *Id*. at 3-4.

On January 22, 2020, Dr. Getachew ordered labs to test Plaintiff for Tramadol levels. ECF No. 26-4 at 4, ¶ 10, *see also* ECF No. 26-5 at 12. The results showed a Tramadol level of 140 ng/mL; a single 100 mg oral dose renders levels between 230-380 ng/mL and a daily regimen of 100 mg four times per day would renders levels between 420-770 ng/mL. ECF No. 26-5 at 202. Based on the lab results showing a "minimal concentration of Tramadol," it was strongly suspected that Plaintiff was diverting his medication. ECF No. 26-4 at 4, ¶ 10.

Nurse Mace states that on January 27, 2020, Plaintiff was again administered Tramadol at the medication administration window. ECF No. 26-4 at 4, ¶ 11. Plaintiff did not take the medication at the window and Nurse Mace knocked on the window to instruct Plaintiff to take the medication. *Id*. In response, Plaintiff left the window without taking the medication and also did not follow directives issued by a correctional officer who told him to take his medication while still in the area. *Id*. Plaintiff simply left the area. *See also* ECF No. 26-5 at 13.

On January 28, 2020, Dr. Getachew discontinued Plaintiff's Tramadol prescription based on the evidence that he was diverting the medication. ECF No. 26-5 at 14. Dr. Getachew asked the nurses to schedule Plaintiff for a provider visit so that Plaintiff could be treated with non-narcotic pain medications. *Id*. Since that time, Plaintiff has received prescriptions for Naproxen and Excedrin Extra Strength. *Id*. at 18-20, 25-26, 73-74, 90-91, 13-35, 141-46, 207-10.

C.     Plaintiff's Opposition

Plaintiff states that "Burnice Swan falsely accused me of doing drugs" and claims that she did so because she was unhappy with the results of a prior lawsuit where this court ruled against her.  ECF No. 33 at 2.  He asserts that she lied to "make others believe that I am a no good drug user," states he wishes to sue for defamation;[2] and complains that this court has not provided him with the assistance of an attorney due to prejudice against him.  *Id*.  Plaintiff does not address the lab results indicating that he had not been taking Tramadol or Neurontin as prescribed.

In correspondence Plaintiff raises new claims alleging he contracted COVID-19 and was refused treatment while other inmates who are Caucasian received treatment.  ECF No. 32-1.  He adds that on December 21, 2020, he was injured when his cell door was closed on his wheelchair.  ECF No. 32-2.  In a letter to this court that is filled with expletives, Plaintiff alleges that he has been treated unfairly by this court because he is African American.  ECF No. 32.

STANDARD OF REVIEW

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an

---

[2] A free-standing claim alleging defamation of character is not a federal claim and may not be raised in this court unless there is a basis for diversity jurisdiction and there is no basis for diversity jurisdiction here.  A state law claim may, under some circumstances, be asserted as a supplemental claim, but a complaint may not be amended simply by suggestion in a response to a motion to dismiss.  Because summary judgment will be granted to defendant on the federal claim, the court would decline to exercise supplemental jurisdiction over any pendent state law claim.

> otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

To the extent that Plaintiff attempts to raise new claims in his opposition, those claims are improperly raised in this context. *See Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, 455 F. Supp. 2d 399, 436 (D. Md. 2006) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314–15 (11th Cir.2004)), *see also Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir.1996) (plaintiff may not amend the complaint when opposing summary judgment).

ANALYSIS

A.   Three Strikes Rule

Defendant asserts that Plaintiff should not have been permitted to institute this lawsuit without full payment of the filing fee because he has accumulated at least three "strikes" under 28 U.S.C. § 1915(g) and cites the following three cases in support: *Robinson v. Rollins, et al.*, Civ.

Action No. AMD-96-322 (D. Md. 1996); *Robinson v. Jessamy, et al.*, Civ. Action No. AMD-99-644 (D. Md. 1999); and *Robinson v. Warden*, Civ. Action No. AMD-05-2260 (D. Md. 2005). ECF No. 26-2 at 4-5; ECF No. 26-6. The first two cases were dismissed as frivolous and both constitute a "strike" within the meaning of 28 U.S.C. § 1915(e)(2)(B)(i). The third case, however, was dismissed without prejudice for Plaintiff's failure to file an amended complaint within the time specified by the court in its order directing Plaintiff to do so.

Dismissal with or without prejudice for any of the grounds enumerated in § 1915(g) constitutes a "strike" under the Act. *Lomax v. Ortiz-Marquez*, _U.S._, 140 S.Ct. 1721, 1724 (2020). Additionally, in order to qualify as a strike under the PLRA, the entire action must have been dismissed on the grounds enumerated in 28 U.S.C. § 1915(g). *See Tolbert v. Stevenson*, 635 F.3d 646, 650 (4th Cir. 2011) (holding dismissal of one part of an "action" for failure to state a claim does not qualify as a strike). Where a "district court's dismissal did not turn on an explicit determination that [the] entire action failed to state a claim or was otherwise frivolous or malicious, it does not qualify as a strike." *Everett v. Whaley*, 504 F. App'x 245, 246 (4th Cir. 2013), citing *Tolbert*, 635 F.3d at 651. It is true, however, that "the fact that an action was dismissed as frivolous, malicious, or failing to state a claim, and not the case's procedural posture at dismissal, determines whether the dismissal constitutes a strike under Section 1915(g)." *Blakely v. Wards*, 738 F.3d 607, 610 (4th Cir. 2013), as amended (Oct. 22, 2013). "The purpose of the PLRA was not . . . to impose indiscriminate restrictions on prisoners' access to the federal courts," but "'to curb the *substantively meritless* prisoner claims that have swamped the federal courts.'" *McLean v. United States*, 566 F.3d 391, 397 (4th Cir. 2009). quoting *Shane v. Fauver,* 213 F.3d 113, 117 (3d Cir. 2000) (emphasis in original). Under these standards, Plaintiff has accumulated only two strikes and his in forma pauperis status need not be revisited.

B.     Eighth Amendment Claim

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *see also Hope v. Pelzer*, 536 U.S. 730, 737 (2002); *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)); *accord Anderson v. Kingsley*, 877 F.3d 539, 543 (4th Cir. 2017). To state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants, or their failure to act, amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Anderson*, 877 F.3d at 543.

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed either to provide it or ensure it was available. *See Farmer v. Brennan*, 511 U.S. 825, 834-7 (1994); *see also Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209-10 (4th Cir. 2017); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care); *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). "A 'serious medical need' is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 210 (4th Cir.

9

2017) (quoting *Iko*, 535 F.3d at 241); *see also Scinto v. Stansberry*, 841 F.3d 219, 228 (4th Cir. 2016) (failure to provide diabetic inmate with insulin where physician acknowledged it was required is evidence of objectively serious medical need).

After a serious medical need is established, a successful Eighth Amendment claim requires proof that the defendants were subjectively reckless in treating or failing to treat the serious medical condition. *See Farmer*, 511 U.S. at 839-40. Under this standard, "the prison official must have both 'subjectively recognized a substantial risk of harm' and 'subjectively recognized that his[/her] actions were inappropriate in light of that risk.'" *Anderson v. Kingsley*, 877 F.3d 539, 545 (4th Cir. 2017) (quoting *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004)); *see also Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997) ("True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk."). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). The subjective knowledge requirement can be met through direct evidence of actual knowledge or through circumstantial evidence tending to establish such knowledge, including evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Scinto*, 841 F.3d at 226 (quoting *Farmer*, 511 U.S. at 842).

At issue here is the termination of Plaintiff's prescription of a narcotic strength pain reliever. Assuming without deciding that Plaintiff suffers an objectively serious medical need prompting the prescribed medication, there is nothing on this record to support his assertion that the prescription was terminated for the purpose of causing him harm. Rather, objective evidence

in the form of laboratory tests support the decision to terminate the prescription because it appeared that Plaintiff was not taking his medication as prescribed, nor was he complying with the requirement to take the medication in the presence of medical staff. The decision to stop providing him with the medication was in fact the opposite of deliberate indifference; to continue providing narcotic strength pain relievers when it becomes apparent that they are being misused or abused is to disregard Plaintiff's health and well-being. Moreover, Defendant Mace's sole participation in the matter was to report what she witnessed to the provider. Her observations of Plaintiff were not the sole basis of the decision to discontinue his prescription. Rather, further evidence in the form of laboratory test results also supported the decision. Defendant Mace is entitled to summary judgment on this claim.

    C.    Retaliation

"The First Amendment right to free speech includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right." *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). To state a claim of retaliation for exercising First Amendment rights, a plaintiff must show that (1) the plaintiff engaged in protected First Amendment activity; (2) the defendant took some action that adversely affected the First Amendment rights; and (3) there was a causal relationship between the protected activity and the defendant's conduct. *See Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005).

Plaintiff asserts that Burnice Mace simply lied about his conduct at the medication administration window because he filed a lawsuit against her previously. ECF No. 1-2. He has offered nothing more to support this allegation outside of his subjective belief that when he files a lawsuit against any particular medical staff they become angry and refuse to give him treatment.

*See* ECF No. 1-2 at 4-5 (Plaintiff's description of why he initially named Dr. Getachew as a defendant and his expressions that he hoped this would not cause Dr. Getachew to stop treating him). Conclusory allegations like this one are subject to dismissal; there is no demonstrated causal link between Plaintiff's prior litigation, which Defendant does not even recall being a party to (ECF No. 26-4 at 2, ¶ 5), and the termination of his prescription.

## CONCLUSION

Defendant is entitled to summary judgment on the claim asserted against her. By separate Order which follows, Defendant's motion to dismiss or for summary judgment, construed as a motion for summary judgment, shall be granted.

April 26, 2021                              _____/s/_____
                                            DEBORAH K. CHASANOW
                                            United States District Judge